IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| In re SCANA Corporation Derivative Litigation | ) C/A No 3:17-3166-MBS <br> ) <br> ) <br> ) |

**ORDER AND OPINION**

Plaintiffs Colleen Witmer and Richard Wickstrom filed a consolidated and amended shareholder derivative complaint on January 30, 2018, against Defendants Kevin N. Marsh, Gregory E. Aliff, James A. Bennett, John F.A.V. Cecil, Sharon A. Decker, D. Maybank Hagood, Lynne M. Miller, James W. Roquemore, Maceo K. Sloan, Alfredo Trujillo, Stephen A. Byrne, and Jimmy E. Addison ("Defendants"), and against Nominal Defendant SCANA Corporation, a South Carolina Corporation ("SCANA"). Plaintiffs seek to redress harm to SCANA stemming from Defendants' alleged breaches of fiduciary duties that, according to Plaintiffs, resulted in the abandonment of two nuclear reactors at the V.C. Summer Nuclear Generating Station near Jenkinsville, South Carolina. Plaintiffs contend Defendants' actions caused SCANA to lose billions of dollars and exposed SCANA to civil and criminal liabilities. More specifically, Plaintiffs contend that Defendants breached their fiduciary duties to SCANA "by, among other things, overseeing, sanctioning, and participating in the grossly mismanaged Nuclear Project; purposefully concealing material information about the Nuclear Project, including findings of the Bechtel Reports,[1] from regulators and the public, in violation of state and federal law; consciously disregarding the many red flags related to the Nuclear Project's inevitable failure; failing to maintain proper internal controls; and

---

[1] SCANA commissioned an analysis of the viability of the nuclear project from Bechtel Corporation, an engineering, construction, and project management company.

accepting incentive compensation tied to their management of the Nuclear Project." ECF No. 65, ¶ 24. Plaintiffs state that SCANA has been forced to accept a takeover offer by Dominion Energy, Inc. ("Dominion") at a "fire-sale price." Id. ¶ 26. Plaintiffs bring causes of action as follows:

    1.    Count I: breach of fiduciary duties against Director Defendants (Aliff, Bennett, Cecil, Decker, Hagood, Miller, Roquemore, Sloan, Trujillo, Micali, and Stowe[2]) because they allegedly oversaw, endorsed, and participated in the gross mismanagement of the project; ignored or consciously disregarded red flags; deliberately concealed material information from regulators and the public; failed to maintain proper internal controls; accepted incentive compensation tied to their management of the project; wasted corporate assets by continuing to construct the project, when they knew or should have known that SCANA, rather than South Carolina ratepayers, would ultimately be responsible for imprudent expenditures; made and allowed SCANA to make false and misleading public statements, which resulted in the artificial inflation of SCANA's share price; allowed for inadequate risk controls over the company's policies and practices; engaged in abuse of control and gross mismanagement of SCANA's assets; failed to adequately exercise their special oversight duties (Nuclear Oversight Committee members); approved incentive compensation under false pretenses of successful management of the project (Compensation Committee members); failed to nominate directors with qualifications relevant to overseeing a nuclear construction project (Nominating and Corporate Governance Committee members); and failed to fulfill their duties to ensure that SCANA issued accurate statements about the nuclear project and to properly fulfill their risk management duties (Audit Committee members).

---

[2] Although mentioned in the body of the complaint, Defendants James M. Micali and Howard C. Stowe are not included in the caption.

2

2. <u>Count II</u>: breach of fiduciary duties against Officer Defendants (Marsh, Byrne, Addison). Plaintiffs contend Officer Defendants breached their fiduciary duties by endorsing, overseeing, and participating in the project, which breaches caused harm to SCANA.

3. <u>Count III</u>: unjust enrichment against Defendants. Plaintiffs allege that Defendants were unjustly enriched and the expense of and to the detriment of SCANA by receiving excessive compensation and bonuses due to the ongoing and pervasive violations of law at the company.

Plaintiffs seek an order awarding damages in an amount sustained by SCANA as a result of Defendants' wrongdoing; directing SCANA to take all necessary actions to reform and improve its corporate governance and internal procedures to prevent a repeat of the damaging events described in the complaint; awarding to SCANA restitution from Defendants and ordering disgorgement of all profits, benefits, and other compensation obtained by Defendants; and awarding costs and disbursements, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses.

This matter is before the court on motions to dismiss filed by (1) Addison on February 23, 2018; (2) Byrne on February 23, 2018; (3) Marsh on February 23, 2018; and (4) Aliff, Bennett, Cecil, Decker, Hagood, Miller, Roquemore, SCANA, Sloan, and Trujilo on March 23, 2018. Plaintiffs filed an omnibus response to all motions on March 9, 2018, to which Aliff, Bennett, Cecil, Decker, Hagood, Miller, Roquemore, SCANA, Sloan, and Trujilo filed a reply on March 13, 2018; and Marsh, Byrne, and Addison each filed a reply March 14, 2018. All Defendants assert that the amended complaint fails to comply with the requirements of Fed. R. Civ. P. 23.1(b)(3), in that Plaintiffs do not demonstrate why demand for relief directly to the Board of Directors would be futile. Addison further moves pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal for failure to state

3

a claim upon which relief can be granted. The court turns first to Rule 23.1(b)(3).[3]

DISCUSSION

A.  Motions to Dismiss under Fed. R. Civ. P. 23.1(b)(3)

The derivative form of action permits an individual shareholder to bring "'suit to enforce a corporate cause of action against officers, directors, and third parties.'" Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991)(quoting Ross v. Bernhard, 396 U.S. 531, 534 (1970)). The purpose of a derivative action is to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers. Id. (quoting Cohen v. Beneficial Loan Corp., 337 U.S. 541, 548 (1949)). To prevent abuse of this remedy, the shareholder must first demonstrate "'that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.'" Id. at 95-96 (quoting Ross, 396 U.S. at 534). Consequently, Rule 23.1(b)(3), which governs the pleading requirements in derivative actions, states that a plaintiff's verified complaint must:

> (3) state with particularity:
> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
> (B) the reasons for not obtaining the action or not making the effort.

A court entertaining a derivative action . . . must apply the demand futility exception as it is defined by the law of the State of incorporation.'" In re World Acceptance Corp. Derivative Litig., Lead Case No. 6:15-cv-2796-MGL, 2017 WL 770539, *6 (D.S.C. Feb. 28, 2017)(quoting Kamen,

---

[3] Defendants also argue that Wickstrom does not have standing because there is no evidence he held stock during the relevant period. Plaintiffs assert, however, that Wickstrom possesses standing to challenge Defendants' conduct during the period he did hold stock, which was subsequent to January 2017. Plaintiffs further observe that Witmer continuously has held SCANA stock since July 2015, so that the question of Wickstrom's stock ownership has no practical effect on the litigation.

500 U.S. at 108-09. The South Carolina Supreme Court and South Carolina Court of Appeals have indicated Delaware law is persuasive in assessing demand futility. Id. (citing Carolina First Corp. v. Whittle, 539 S.E.2d 402, 407 (S.C. Ct. App. 2000) (noting South Carolina has adopted Fed. R. Civ. P. 23.1(b) procedurally, but applying Delaware law in analyzing demand futility)).

There are two tests for determining demand futility under Delaware law. The district court in In re World Acceptance Corp. explained the analyses:

[1]. Rales Test

If a plaintiff challenges the board's failure to act, "a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, [a majority of] the board of directors could have properly exercised its independent and disinterested business judgment in responding to the demand." Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993).

A director is considered interested where "he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders." Id. at 936. A plaintiff can also establish a director is interested by alleging conduct "so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of [personal] director liability therefore exists[.]" In re Citigroup S'holder Derivative Litig., 964 A.2d 106, 121 (Del. Ch. 2009). This is so because there is "presumptively a reason to doubt that a director who faces a substantial likelihood of personal liability could be disinterested when responding to a demand." Id.

"When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption." In re Baxter Int'l, Inc. S'holders Litig., 654 A.2d 1268, 1270 (Del. Ch. 1995).

. . . .

[2]. Aronson Test

If the plaintiff challenges a specific board decision, the court must determine "whether, under the particularized facts alleged, a reasonable doubt is created that a

5

majority of the directors: (1) are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." Aronson, 473 A.2d at 814. The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Id. at 812. The prongs of the Aronson test are in the disjunctive; therefore, if plaintiff creates a reasonable doubt as to either prong of the test, demand is excused. Brehm v. Eisner, 746 A.2d 244, 255 (Del. 2000).

In re World Acceptance Corp., 2017 WL 770539, *6-8.

Under Aronson, demand is futile when directors allegedly knowingly or recklessly disregard illegal activity, especially when the alleged wrongdoing is of substantial magnitude and duration; or conscientiously permit a known violation of law by the corporation to occur. See In re Pfizer Inc. S'holder Derivative Litig., 722 F. Supp. 2d 453, 460 (S.D.N.Y. 2010) (citing cases). Demand also may be excused if "'in rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, [resulting in] a substantial likelihood of director liability,' . . . , or if the directors exhibited 'gross negligence' in breaching their duty of care." In re Abbott Labs. Derivative S'holders Litig., 325 F.3d 795, 807 (7th Cir. 2003) (citing Aronson, 473 A.2d at 812; Brehm, 746 A.2d at 259).

\* \* \*

Marsh, Aliff, Bennett, Cecil, Decker, Hagood, Miller, Roquemore, Sloan, and Trujillo were serving on the Board of SCANA when the complaint was filed, and served as directors at all relevant times. ECF No. 65, ¶¶ 184, 185. Plaintiffs denominate these ten individuals as "Demand Directors." Id. ¶ 53. Plaintiffs contend that demand is futile because Demand Directors face a substantial likelihood of liability for their participation in the wrongful acts alleged in the complaint.

The threshold question is which test applies when viewing the allegations of the complaint.

Defendants contend that the gravamen of Plaintiffs' claims is that Demand Directors failed to exercise proper oversight and management of the nuclear project, which, because Plaintiffs purportedly do not challenge a Board decision, falls under Rales and its progeny. Specifically, in order to show that Demand Directors breached their duty of care by failing adequately to oversee the project, Plaintiffs would have to show "(1) that the directors knew or (2) should have known that violations of law were occurring and, in either event, (3) that the directors took no steps in a good faith effort to prevent or remedy that situation, and (4) that such failure proximately resulted in the losses complained of[.]" See In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 971 (Del. Ch. 1996)). In such a case, "[o]nly a sustained or systemic failure of a board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability.'" Id. Further, a derivative complaint based on Caremark must identify particular warning signs or 'red flags' that were ignored by the board to plead a failure of oversight." Hazelton v. Kuttner, C/A No. 08:06-cv-02063-GRA; 2007 WL 1120405, *3 (D.S.C. April 3, 2007) (citing In re Baxter Int'l S'holders, 654 A.2d at 1270–71).

Defendants assert that Plaintiffs cannot prevail because SCANA had a Nuclear Oversight Committee charged with meeting to monitor, discuss, and evaluate SCANA's nuclear operations; an Audit Committee to review risk management programs as well as oversee SCANA's systems of disclosure and internal controls; and a Risk Management Committee, all of which demonstrate that Demand Directors met their obligations to implement appropriate systems and controls to oversee SCANA's operations. Defendants also contend that Plaintiffs' "so-called red flag allegations" are conclusory and devoid of any particular facts establishing either awareness of the alleged warnings,

7

such as those contained in the Bechtel Reports and certain meetings and email correspondence, or that any such "red flags" were ignored by a majority of Demand Directors. Defendants further assert that Plaintiffs fail to allege sufficient facts to show that Demand Directors face a substantial likelihood of liability based on their service on SCANA's various committees.

Plaintiffs contend, however, that the complaint is not governed by Caremark and Rales. Rather, Plaintiffs frame their complaint as asserting claims for breach of the non-exculpable fiduciary duties of loyalty and good faith.

> Under Delaware law, the duty of loyalty requires a corporation's officers and directors to act in good faith with respect to the company. . . . It follows that the [complaint] must include allegations that the defendant directors' acts or failures to act were infected with bad faith. Importantly, this is a difficult standard to meet because "an extreme set of facts is required to sustain a disloyalty claim" premised on the notion that directors were disregarding their duties. Lyondell Chem. Co. v. Ryan, 970 A.2d 235, 243 (Del. 2009).

In re Capital One Derivative S'holder Litig., 979 F. Supp. 2d 682, 696 (E.D. Va. 2013).

The court will defer to Plaintiffs' theory that Demand Directors failed to make business decisions on an informed basis, in good faith, and in the best interests of SCANA.[4] The question becomes, then, whether Plaintiffs have established futility under Aronson.

Plaintiffs assert that there is good reason to doubt any of Demand Directors could have disinterestedly considered a demand in good faith given their conscious disregard of, and their knowing failure to address, the findings of the Bechtel Reports. Plaintiffs contend that Demand Directors received reports on progress, issues, and variances related to the construction process, including the Bechtel Reports. Plaintiffs contend that Demand Directors knew or should have

---

[4] Because Plaintiffs' allegations implicate nonexculpatory duties, the court will not address Defendants' argument that Article 9 of SCANA's Articles of Incorporation insulate Demand Defendants from liability. See ECF No. 83-3, 15-16.

8

known that the nuclear project was critical to SCANA's reputation and financial well-being, but consciously turned a blind eye to serious problems and failed to act. For example, the Bechtel Reports purportedly put "every Board member on notice of insurmountable problems with the Nuclear Project including an unrealistic and unachievable schedule; unlikely completion of engineering and licensing workload; and poor productivity." ECF No. 88, 13. Plaintiffs argue it is illogical to conclude Demand Directors authorized retention of Bechtel to investigate the nuclear project, and then "simply 'forgot' to follow-up for over two years." ECF No. 22. Plaintiff further point to a memorandum disseminated by Santee Cooper, SCANA's partner on the nuclear project, that purportedly showed a concern about whether releasing the Bechtel Reports to shareholders would expose directors and officers to liability.

Relying on Wenham v. Owings, Civil Action No. 6:06-3312-HFF, Civil Action No. 6:07-975-HFF, 2009 WL 10677931 (D.S.C. Jan. 26, 2009), Plaintiffs contend that membership on the Nuclear Oversight Committee supports a finding of demand futility because the committee in question was intimately linked with the alleged wrongdoing.[5] Plaintiffs assert six of the ten Directors (Bennett, Decker, Hagood, Roquemore, Sloan, and Trujillo) served on the Nuclear Oversight Committee during the relevant period, and were tasked with periodically touring the nuclear project and its training facilities; meeting at least quarterly to monitor, discuss, and evaluate SCANA's nuclear operations; reviewing periodically SCANA's nuclear operations with the Institute

---

[5] In Wenham, the plaintiff contended that the majority of the board of directors lacked the disinterestedness and independence to evaluate the suit. The court reviewed the allegations that members of the Compensation Committee knowingly and deliberately backdated stock option grants, and that members of the Audit Committee knowingly and deliberately participated in and approved the filing of false financial statements and other false SEC filings. Construing the facts and all inferences in favor of the plaintiff, the court determined that a demand would be futile because these committees were directly linked to the wrongdoing.

of Power Operations; and presenting an independent report to the board on the status of SCANA's nuclear operations. As such, Plaintiffs argue that Demand Directors on the Nuclear Oversight Committee could not ignore the profound problems plaguing the project.

Regarding the Nominating and Governance Committee, Plaintiffs assert Directors Aliff, Hagood, Miller, and Trujillo should have populated the Nuclear Oversight Committee with persons more qualified to understand issues arising in this area. Plaintiffs argue the decisions made by the Nominating and Governance Committee are not insulated by the business judgment rule because the Directors making the decisions were not disinterested parties.

As to the Compensation Committee (Bennett, Cecil, Decker, Roquemore, Sloan), Plaintiffs contend these Directors improperly approved millions of dollars in incentive award compensation for some of Individual Defendants when these Directors knew or should have known the project was in peril. As to the Audit Committee (Aliff, Bennett, Cecil, Hagood, Miller), Plaintiffs state that these Directors failed to ensure that SCANA's SEC filings were not materially false or misleading, especially in view of these Directors' knowledge of the problems with the project. With respect to the Executive Committee (Marsh, Aliff, Bennett, Hagood, Roquemore, Sloan, Micali, Stowe), Plaintiffs allege that Marsh from time to time sought the advice of the Executive Committee, and that Bechtel representatives met with Marsh during the week of October 12-16, 2015.

Plaintiffs contend Demand Directors were aware of issues surrounding the viability of the project, and yet "caused SCANA to make materially misleading statements" about the project. Id. ¶ 187. According to Plaintiffs, Demand Directors on the Compensation Committee approved "incentive award" compensation for SCANA's officers, even though the project was in jeopardy. Plaintiffs argue that Demand Directors on the Audit Committee failed to fulfill their risk

10

management duties and failed to ensure SCANA's filings with the Securities and Exchange Commission were accurate. According to Plaintiffs, Demand Directors "knowingly adopted, endorsed, or condoned a business strategy that caused a clearly failing project to continue, which cannot be considered a legitimate exercise of business judgment." Id. ¶ 192.

The court concludes Plaintiffs create a reasonable doubt that a majority of Demand Directors are disinterested and independent or that their decisions relating to the project were products of a valid exercise of business judgment. Accordingly, the court **denies** Defendants' motions to dismiss pursuant to Rule 23.1(b)(3).

C. <u>Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)</u>

Under Rule 12(b)(6), "a party may assert the following defense[] by motion: . . . (6) failure to state a claim upon which relief can be granted[.]" The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. Id. at 679. As stated in Twombly, "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice

11

if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678. Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. Twombly, 550 U.S. at 555.

Addison contends the complaint is insufficient under Rule 12(b)(6) because the complaint does not contain sufficient well-pleaded factual allegations to support a reasonable inference that he is liable for either a breach of fiduciary duty or unjust enrichment. The complaint alleges that Addison signed SCANA's 2016 Annual Report on Form 10-K that stated: "When [Nuclear Units 2 and 3 under construction at the V.C. Summer Station] are completed, our generating capacity and the percentage of total generating capacity represented by nuclear sources are expected to increase." ECF No. 65, ¶ 90. The complaint further alleges that Addison signed SCANA's 2017 Annual Report on Form 10-K, stating: "In addition, construction of significant new transmission infrastructure is necessary to support the New Units and is underway as an integral part of the project." Id. ¶ 106. Given the findings in the Bechtel Reports that established the lack of construction progress, Plaintiffs assert these statements are false and misleading. Plaintiffs observe that making false and misleading statements to the SEC constitutes a breach of fiduciary duty.

As to the unjust enrichment claim, Plaintiffs assert that Addison received approximately $2.5 million in total compensation in both 2014 and 2015, which sums lack justification because SCANA's financial expenditure was doomed. The court finds that Plaintiffs' claims against Addison are plausible on their face. Addison's motion to dismiss under Rule 12(b)(6) is **denied**.

## CONCLUSION

For the reasons stated, Defendants' motions to dismiss (ECF Nos. 79, 80, 81, 83) are **denied**.

Plaintiffs are directed to correct the caption of the complaint to include Micali and Stowe as Defendants within ten days of the date of entry of this order.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

June 27, 2018