**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

IN RE SCANA CORPORATION
DERIVATIVE LITIGATION

Lead Case No. 3:17-cv-03166-MBS

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

## I.    INTRODUCTION

This is the moment Defendants have been waiting for: the chance to finally try to play what they think is their "Get Out of Jail Free" card.  Defendants planned to file their Motion for Judgment on the Pleadings (the "Motion") with this Court for over a year, ever since the announcement of SCANA Corporation's ("SCANA" or the "Company") pending merger with Dominion Energy, Inc. ("Dominion") on January 3, 2018 (the "Merger").  Since the Merger was announced, every step taken by Defendants in this shareholder derivative action (the "Action") has been aimed at delay, including their filed but subsequently withdrawn motion to stay the Action indefinitely (the "First Stay Motion") pending the resolution of "parallel proceedings,"[1] and a second motion to stay the Action indefinitely (the "SLC Stay Motion") pending the purported "investigation" of a belatedly formed "Special Litigation Committee" – a non-existent legal mechanism under South Carolina corporate law – which was properly denied by this Court.

---

[1] The "parallel proceedings" that the First Stay Motion sought to stay this Action in favor of included lawsuits asserted by and on behalf of ratepayers against SCANA, as well as ongoing investigations by state, federal, and regulatory authorities, which would likely take years to resolve.  After the First Stay Motion was fully briefed, Defendants voluntarily withdrew it because they knew it was doomed in light of the denial of a similar motion for a blanket stay in the derivative litigation pending on behalf of SCANA in state court.

Defendants' *modus operandi* all along has been to stall the litigation of this Action by any means necessary until the Merger closed, and then to use the Merger as their escape hatch.

Indeed, Defendants' campaign to indefinitely delay or dismiss this Action has now reached its nadir, as Defendants once again beseech this Court to apply law they wish controlled in South Carolina, rather than law which actually exists. This time around, Defendants patch together inapposite South Carolina "authority" in order to create the impression that South Carolina has adopted and follows Delaware's strict application of the so-called "continuous ownership rule," whereby a derivative plaintiff's standing is deemed to have been extinguished by virtue of a merger. After suffering litigation defeat after litigation defeat, and well-aware of the ample documentary evidence of their serious wrongdoing, Defendants look to the Merger as their chance to avoid accountability for their egregious misconduct.

It is true that under Delaware law, where a plaintiff to a pending derivative action loses their status as a shareholder due to a merger the plaintiff no longer has "standing" to maintain the derivative suit, and that a number of other jurisdictions have followed Delaware's approach. Motion at 7.[2] But it is also true that still other jurisdictions, including North Carolina, Pennsylvania, and Alabama have expressly rejected invitations from corporate defendants to adopt this rule based on fundamental concerns of justice and equity, and that, as Plaintiffs noted in defeating the SLC Stay Motion, South Carolina courts do not blindly follow Delaware corporate law.

Indeed, South Carolina courts have explicitly declined to apply Delaware law where the result of such application would be "too restrictive" or "harsh." *See Carolina First Corp. v.*

---

[2]    Notably, even Delaware recognizes exceptions to this rule when the merger in question is the product of fraud. *See Arkansas Teacher Ret. Sys. v. Countrywide Fin. Corp.*, 75 A.3d 888 (Del. 2013) (*en banc*).

*Whittle*, 343 S.C. 176, 192, 539 S.E.2d 402, 411 (Ct. App. 2000) ("*Whittle*").  It would be difficult to imagine a more restrictive or harsh result for this Action, where (a) this Court has sustained Plaintiffs' claims for relief against Defendants in their entirety; (b) this Court held that despite heightened pleading standards, pre-suit demand on SCANA's Board of Directors (the "Board") would have been futile;[3] and (c) where Plaintiffs have obtained documentary evidence corroborating their allegations and directly implicating Defendants in the largest corporate disaster in South Carolina's history, than one where Defendants are permitted to walk away scot-free because of the Merger.

The specific question of whether a plaintiff-shareholder of a South Carolina corporation loses standing to pursue a derivative action after being involuntarily stripped of their shares – having taken no affirmative steps to surrender their status as a shareholder – is one of first impression.  What is ultimately missing from the Motion's "survey" of the law from other jurisdictions is any appreciation of nuance.  Delaware's strict interpretation of the continuous ownership rule in the event of a merger, as adopted elsewhere, provides ***zero*** flexibility for a court to ensure that faithless corporate fiduciaries are held accountable, or a just or equitable outcome of derivative litigation.  But again, per *Whittle,* this Court need not so constrain itself and can reject any aspect of Delaware law that it deems too inflexible or harsh.  As detailed herein, other jurisdictions have declined to follow the "continuous ownership rule" in any context after a derivative action is commenced, while others still acknowledge that in the scenario where a

---

[3]    In denying Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 23.1 ("Rule 23.1"), this Court concluded that "Plaintiffs create a reasonable doubt that a majority of [the] Demand Directors are disinterested and independent or that their decisions relating to the [Nuclear Project] were products of a valid exercise of business judgment."  *In re SCANA Corp. Derivative Litig.,* No. CV 3:17-3166-MBS, 2018 WL 3141813, at *6 (D.S.C. June 27, 2018).

derivative plaintiff's shareholder status is stripped away via a merger, it would be patently unjust to see meritorious claims terminated due to a merger effectuated by the very individuals seeking to escape liability.

In concluding that South Carolina law permits this Action against Defendants to proceed post-Merger, this Court has the opportunity to send a powerful message to Defendants and to the directors, officers, and shareholders of all South Carolina corporations: South Carolina law will not permit those top insiders who breach their fiduciary duties to the corporation, abuse the trust of shareholders, and lie to South Carolina citizens to escape accountability simply by selling off the Company they so severely damaged through their own misconduct.

## II.    PROCEDURAL BACKGROUND

South Carolinians and shareholders were shocked when SCANA announced the abandonment of the construction of two nuclear reactors at the V.C. Summer Nuclear Station (the "Nuclear Project") – a $9 billion project SCANA's officers and directors relentlessly pushed forward for almost two years even after they were told it was in fundamental jeopardy – on July 31, 2017. Out of the scores of lawsuits surrounding the failure of the Nuclear Project, this is the only Action that sought recovery on behalf of SCANA to recompense the Company for the profound breaches of fiduciary duties by its directors and officers.

Plaintiffs Colleen Witmer and Richard Wickstrom filed substantially similar derivative complaints alleging that SCANA's directors breached their fiduciary duties by overseeing the Nuclear Project – indeed, some of the directors were on a committee with direct oversight responsibilities – on November 21, 2017 and 22, 2017.

On January 3, 2018, SCANA announced that it had entered into an agreement and plan of sale whereby Dominion would acquire SCANA.

In their first delay tactic, on January 16, 2018, SCANA moved to stay this Action indefinitely pending the conclusion of a related securities fraud class action pending in this Court against SCANA, other lawsuits against SCANA asserted by and on behalf of ratepayers, and ongoing investigations by state, federal, and regulatory authorities. After full briefing by the parties to the Action, SCANA reluctantly withdrew its First Stay Motion after a similar one in state court had failed.

On January 30, 2018, Plaintiffs filed their amended and consolidated complaint (the "Complaint"). The Complaint asserted claims under South Carolina law against Defendants for breach of fiduciary duty and unjust enrichment, and alleged that pre-suit demand on the Board should be excused.

Defendants continued to delay this Action by moving to dismiss while ignoring the egregious facts giving rise to the claims asserted against them. On February 23, 2018, Defendants filed motions to dismiss in which they argued, *inter alia,* that SCANA's claims were the exclusive province of the Board because Plaintiffs failed to adequately allege that demand was excused, and therefore Plaintiffs lacked standing to prosecute those claims.

On June 27, 2018, this Court denied Defendants' motions to dismiss in its entirety, finding that pre-suit demand was excused and that Plaintiffs could properly stand in SCANA's shoes and proceed against Defendants on behalf of the Company.[4]

On July 24, 2018, SCANA's delay tactics continued. On that date, SCANA once again moved to stay this Action indefinitely by filing the SLC Stay Motion. SCANA argued that a stay

---

[4]    This Court concluded not only that Plaintiffs sufficiently alleged that pre-suit demand on the Board was excused pursuant to Rule 23.1, but also that all of Plaintiffs' claims for relief on SCANA's behalf against the Individual Defendants were adequately asserted pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").

was warranted because the Board had formed a Special Litigation Committee ("SLC") to investigate the allegations and claims asserted by Plaintiffs, even though Plaintiffs' Complaint had already been sustained in its entirety. The SLC Stay Motion was a transparent attempt by Defendants to buy more time, as the controversial SLC mechanism has never before been authorized under South Carolina law.

On October 31, 2018, the Court denied the SLC Stay Motion, holding the Action would proceed until the South Carolina Public Service Commission ("PSC") decided whether to approve the Merger.

On December 21, 2018, Defendants' delay tactics paid off, as the PSC approved the Merger.

On December 28, 2018, SCANA moved to stay this Action for the third time. The Court granted this motion on January 3, 2019, and Defendants filed the instant Motion on January 7, 2019.

### III.    ARGUMENT

#### A.    South Carolina Law Does Not Compel Blind Adherence to Delaware's Strict Application of the "Continuous Ownership Rule"

Contrary to Defendants' assertions, ***South Carolina law is silent*** as to whether a derivative plaintiff loses standing to prosecute claims against corporate fiduciaries where the subject corporation merges with another company during the pendency of the derivative action (the so-called "continuous ownership rule"). Despite ample opportunity to do so, the South Carolina legislature has never elected to impose a continuous ownership requirement for shareholder derivative actions in S.C. Code § 33-7-400. North Carolina, for example, has declined the request to read such a requirement into their analogous statute:

> Defendants' argument assumes that a plaintiff who has filed suit pursuant to this statute is required to retain his shares throughout the course of litigation. However,

> there is no requirement in N.C.G.S. § 55–55 that a shareholder bringing suit remain a share owner "after" the time of the transaction complained about or "after" suit was filed. Reading this statute in a reasonable light and giving it an ordinary meaning, we find there is no requirement of continuing share ownership in order for an individual who is a shareholder at the time of the transaction about which he is complaining and at the time the action is filed, to proceed with a derivative action. Had the legislature intended to include such a requirement in the corporate statutes it would have done so.

*Alford v. Shaw*, 327 N.C. 526, 534–35, 398 S.E.2d 445, 449 (1990) (internal citations and footnotes omitted).

Defendants beseech this Court to follow – or more accurately, create – a rule by which their liability would be effectively precluded based on the Merger, creating a perverse incentive for directors and senior executives of South Carolina corporations to "sell off" their liability, rather than be made to answer for their breaches of fiduciary duty and other misconduct. To this end, Defendants rely on two cases to persuade this Court that South Carolina should adopt Delaware's strict continuous ownership rule.

Defendants principally rely on *Johnson v. Baldwin*, 221 S.C. 141 (1952). But, upon close inspection, the sixty-seven-year-old *Johnson* decision is hardly the "black letter law" with respect to standing of derivative plaintiffs that Defendants try to portray it as. In *Johnson*, the derivative plaintiff submitted an irrevocable demand for the payment of her shares when the company at issue merged. *Id.* at 147. It was because of this affirmative demand for payment **by the plaintiff** that the Court noted: "she was bound by her election and may not now withdraw her demand and restore her status as a stockholder." *Id.* at 156. The Court reasoned that the plaintiff forfeited her standing to maintain derivative claims because she "made her demand [for payment of her shares] with full knowledge of the facts and under our statute plaintiff ceased to be a stockholder when she made her demand." *Id.* at 158. *Johnson* stands solely for the unremarkable proposition that

when a shareholder derivative plaintiff affirmatively takes steps to dispose of their shares and cease to be a shareholder, that plaintiff can no longer maintain a derivative suit.[5]

In Defendants' other case citation, they rely purely on *dicta* from an unpublished decision applying Nevada law – not South Carolina law – in support of their effort to terminate the Action. In *In The Estate of Jacquelin K. Stevenson v. Kavanaugh*, No. 08-CP-10-1735, 2013 WL 673728 (S.C.Com.Pl. Jan. 17, 2013) the Court held, notably **without** citing *Johnson*, that Nevada follows Delaware's strict interpretation of the continuous ownership rule and opined in *dicta* that "to the extent that South Carolina law is relevant to the question" – which it was not – South Carolina would follow suit. *Id.* This *dicta* has no precedential value and is by no means controlling.

### B.    Exceptions to the Continuous Ownership Rule Exist and the Court Should Apply Them Here

Neither the South Carolina legislature nor its Courts have ever adopted a rule which directly addresses the situation currently before the Court. Absent such guidance, the Court is free to fashion a rule which rejects Delaware's harsh outcome. In similar circumstances, other states have elected to forego a strict application of the continuous ownership rule when the plaintiff-shareholder is stripped of their shares in the subject corporation as a result of a merger. In addressing the potential application of this rule in Alabama, the Alabama Supreme Court opined:

> The defendants, however, would have this Court take this proposition one step further and apply the rule to these plaintiffs, who are now non-stockholders of Lexington because of its merger with Colonial. We decline to so hold. To so extend the rule is to materially change the rule and thus to violate one of the most basic tenets of jurisprudence: that lack of standing should not be applied to *abolish* an

---

[5]    Other states, such as Kansas, do not even recognize a distinction based on whether a shareholder voluntarily disposed of their shares of the corporation (as in *Johnson*) or were stripped of those shares as a result of a merger – they simply do not follow the continuous ownership rule at all. *See Smith v. Roger Smith & Sons, Inc.*, 277 P.3d 1193 (Kan. Ct. App. 2012); *White ex rel. B.W. II, L.L.C. v. Barbieri*, 284 P.3d 375, at *4 (Kan. Ct. App. 2012) (observing that in *Smith*, the "court held that K.S.A. 60-223a allows a shareholder's derivative action to continue after the shareholder loses his or her ownership interest").

existing substantive right of action. Such a rule would allow an otherwise valid and actionable derivative suit against an officer of the corporation to be abated simply by effecting a merger with another corporation, as if the mere act of merger wipes out the alleged culpable conduct.

*Shelton v. Thompson*, 544 So. 2d 845, 848 (Ala. 1989) (emphasis in original).

In response to the argument that other states, including Delaware, would reach the opposite conclusion, the Alabama Supreme Court incisively stated that those states, "[b]y their blind adherence to the absolutism of the 'stockholder status prerequisite…use 'lack of standing' to abolish the remedy. We refuse to adopt such a rule." *Id*. at 849 (Ala. 1989).

The Commonwealth of Pennsylvania also does not permit the termination of a shareholder derivative suit as a result of a merger. In *Drain v. Covenant Life Ins. Co.*, 454 Pa. Super. 143, 151, 685 A.2d 119, 126-127 (1996), *aff'd*, 551 Pa. 570, 712 A.2d 273 (1998) the Court held that where a stockholder plaintiff is divested of their shares during the pendency of litigation, that shareholder nonetheless retains standing to pursue their derivative claims. *See also Warden v. McLelland*, 288 F.3d 105, 111 (3d Cir. 2002) (the continuous ownership rule may be excused where "the failure to do so is the result of corporate action in which the holder did not acquiesce, and ... the derivative action was commenced prior to the corporate action terminating the holder's status...") (internal citations omitted).

North Carolina too recognizes the distinction between the loss of share ownership as a result of a plaintiff's own affirmative decisions, on the one hand – such as electing to sell their shares of stock during the pendency of the derivative litigation – and that decision being thrust upon the shareholder by corporate insiders, on the other hand. As the North Carolina Supreme Court observed, exceptions to this rule are necessary:

Moreover, although many jurisdictions do require plaintiffs who initiated a derivative suit to maintain continuous share ownership during the course of litigation, an exception to this general rule allows shareholders who initiate a

derivative suit to retain standing when their share ownership is terminated through an allegedly fraudulent merger *or one occurring as a result of breaches of fiduciary duties by those in control of the corporation*.

*Alford,* 327 N.C. at 535 (emphasis added).

This distinction should be honored here. Though they try, Defendants cannot credibly divorce their grave misconduct giving rise to this Action, which led to the abandonment of the $9 billion Nuclear Project and massive damages to the Company, from the Merger made necessary by their own actions.[6] As alleged with particularity in the Action and as corroborated by documentary evidence obtained by Plaintiffs, Defendants knew the Nuclear Project was doomed long before it was ever publicly acknowledged. Those same Defendants should not be able to sidestep shareholders' meritorious and zealous efforts to hold them accountable for the severe harm they caused SCANA, because of *their decision* to sell the Company *at a discount*, a step which was only made necessary *because of their own actions and abject fiduciary failures*.[7]

### C.    In Keeping with Equity and Sound Public Policy, this Court Should Adopt a Modified Continuous Ownership Requirement

Public policy and equity should inform this Court's decision as to whether the Action proceeds post-Merger. Plaintiffs agree that a shareholder of a South Carolina corporation who voluntarily relinquishes their share ownership during the pendency of a derivative action should not be permitted to maintain that action. But, when the very same individual defendants who have

---

[6]    Defendants' attempt to trumpet the "substantial compensation received by shareholders" as a result of the Merger is disingenuous. SCANA shareholders received 0.6690 shares of Dominion stock for each share of SCANA as a result of the Merger. That amounts to approximately $47.80 per share based on the closing price of Dominion stock on December 31, 2018. SCANA's stock traded at $64.37 per share on July 31, 2017, the day SCANA announced the abandonment of the Nuclear Project.

[7]    Should there be any credible dispute that the mismanagement of the Nuclear Project was a critical and overwhelming factor in the Merger, Plaintiffs would welcome an evidentiary hearing before this Court, where Defendants can testify under oath regarding all of the factors which gave rise to the Merger.

had claims for breaches of fiduciary duty sustained against them set into motion the mechanism by which all shareholders will be stripped of their status as shareholders, to terminate a meritorious derivative action is a quintessential example of the "restrictive" and "harsh" result the South Carolina Supreme Court strongly warned against in *Whittle* when instructing South Carolina courts to not blindly follow every aspect of Delaware corporate law. This Court would not be alone in ruling as such:

> Under these facts, even were continuous ownership a requirement under the statute, we hold that if in the course of a shareholder derivative suit defendants' actions terminate the plaintiffs' shareholder status and these actions are closely related to the grounds for the derivative suit, the plaintiffs would retain standing to continue prosecution of the suit they initiated. To hold otherwise, that is to hold that a merged corporation or its shareholders loses standing to sue in a situation in which the allegedly wrongful activities of the defendants forced the plaintiffs to lose their status as shareholders, would be highly inequitable.

*Alford*, 327 N.C. at 398.

It is hard to imagine that the intent of the South Carolina legislature was to allow for the possibility that a shareholder of a South Carolina corporation would initiate a derivative action, defeat motions to dismiss based on Rule 12(b)(6) and the heightened pleading standard of Rule 23.1, review thousands of pages of documents obtained via a FOIA request corroborating the allegations asserted against the defendants, and incur significant costs in a zealous effort to prosecute the sustained claims, only to see the derivative action evaporate following a merger. The Plaintiffs in this Action have actively and aggressively litigated eminently meritorious derivative claims for over a year, and despite Defendants' regular attempts to dismiss the Action or slow its pace to a crawl, Plaintiffs have the right to see the Action through to its conclusion and ensure that the Defendants are held to account for the grave breaches of fiduciary duty that enabled the Nuclear Project to completely unravel.

## IV.    CONCLUSION

For the reasons detailed herein, the Motion should be denied.

Dated: February 5, 2019

**HOPKINS LAW FIRM, LLC**

*s/ J. Clay Hopkins*

J. Clay Hopkins (Federal Bar No. 12147)
William E. Hopkins, Jr. (Federal Bar No. 6075)
12019 Ocean Highway
P.O. Box 1885
Pawleys Island, SC 29585
Tel.: (843) 314-4202
clay@hopkinsfirm.com

***Co-Liaison Counsel for Plaintiffs***

**BLAND RICHTER, LLP**

Eric S. Bland (Federal Bar No. 5472)
1500 Calhoun Street
Post Office Box 72
Columbia, South Carolina 29202
Tel.: (843) 573-9900

***Co-Liaison Counsel for Plaintiffs***

**THE WEISER LAW FIRM, P.C.**

Robert B. Weiser
Brett D. Stecker
James M. Ficaro
22 Cassatt Avenue
Berwyn, PA 19312
Tel.: 610-225-2677

***Co-Lead Counsel for Plaintiffs***

**BERNSTEIN LIEBHARD LLP**

Stanley D. Bernstein
Joseph R. Seidman, Jr.
10 East 40th Street
New York, NY 10016
Tel.: (212) 779-1414

***Co-Lead Counsel for Plaintiffs***