IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| IN RE: SCANA CORPORATION | ) | C/A No. 3:17-3166-MBS |
| DERIVATIVE LITIGATION | ) | |

**ORDER AND OPINION**

The within action arises from a series of events that began in 2007, when Nominal Defendant SCANA Corporation ("SCANA") received legislative approval to construct a nuclear power facility at the V.C. Summer Nuclear Generating Station in Fairfield County, South Carolina. SCANA and its partner spent approximately $9 billion on the project, which ultimately was abandoned. Plaintiffs Colleen Witmer and Richard Wickstrom, derivatively on behalf of SCANA Corporation, filed separate actions that were consolidated by order filed January 23, 2018.[1] Plaintiffs filed an amended derivative complaint on January 30, 2018, and a corrected amended derivative complaint on July 9, 2018. Plaintiffs allege that SCANA lost billions of dollars in write-downs and unrecoverable costs, lost billions in market capitalization, and has been exposed to civil and criminal liabilities. Plaintiffs contend Defendants Kevin B. Marsh, Gregory E. Aliff, James A. Bennett, John F.A.V. Cecil, Sharon A. Decker, D. Maybank Hagood, Lynne M. Miller, James W. Roquemore, Maceo K. Sloan, Alfredo Trujillo, Stephen A. Byrne, James M. Micali, Harold C. Stowe, and Jimmy E. Addison, officers and directors of SCANA,

> breached their fiduciary duties to [SCANA] and its shareholders and acted in bad faith by, among other things, overseeing, sanctioning, and participating in the grossly mismanaged Nuclear Project; purposefully concealing material information about the Nuclear Project, including findings of the Bechtel Reports, from regulators and the public, in violation of state and federal law; consciously disregarding the many red flags related to the Nuclear Project's inevitable failure; failing to maintain proper internal controls; and accepting incentive compensation tied to their management of

---

[1] The cases were *Witmer v. Aliff*, C/A No. 3:17-3166-MBS, and *Wickstrom v. Aliff*, C/A No. 3:17-3181-MBS. SCANA was Nominal Defendant in each case.

the Nuclear Project.

ECF No. 115, ¶ 24.

On January 2, 2018, SCANA entered into an Agreement and Plan of Merger Agreement (the "Merger Agreement").by which SCANA would become a wholly-owned subsidiary of Dominion Energy, Inc. ("Dominion"). ECF No. 172-2. Pursuant to the Merger Agreement, each share of SCANA common stock was exchanged for 0.669 shares of common stock in Dominion. The merger was consummated effective January 1, 2019. SCANA's outstanding shares of common stock were canceled and SCANA became a wholly-owned subsidiary of Dominion. On January 7, 2019, Defendants filed a motion for judgment on the pleadings, asserting that, because Plaintiffs no longer possess SCANA stock, they no longer have standing to maintain this action. Plaintiffs filed a response in opposition on February 5, 2019, to which Defendants filed a reply on February 26, 2019. The court heard arguments on April 4, 2019.

## DISCUSSION

In reviewing a motion for judgment on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c), the court applies the same standard used for motions made pursuant to Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1955 (2007)). When a court is tasked with "weighing the sufficiency of the complaint" as it is upon motions for judgment on the pleadings, it must "accept[] all well-pled facts as true and construe[] these facts in the light most favorable to the plaintiff[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). However, the court is not required to defer to allegations in the complaint to the extent that they

"contradict matters properly subject to judicial notice or by exhibit." *Demetry v. Lasko Prods., Inc.*, 284 F. App'x 14, 15 (4th Cir. 2008) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)).

Under South Carolina common law,

> [t]he right of a stockholder to maintain a derivative action against the directors of a corporation 'inheres in and attaches to his ownership of its stock and does not exist apart from such ownership.' 150 19 C.J.S., Corporations, § 824, page 228. It is a right which depends on status. If there is a loss of status, the action abates so far as the stockholder bringing the action is concerned, although the cause of action itself survives. *Kehaya v. Axton*, D.C., 32 F. Supp. 266. Accordingly, it has been held that where such a derivative action is instituted by preferred stockholders and thereafter the preferred stock is retired, the plaintiffs have no further standing, whether the action is abated or not. *Hayman v. Morris*, Sup., 46 N.Y.S.2d 482. . . . It is our conclusion that the right of the plaintiff to continue to prosecute this action depends upon her retaining her status as a stockholder and if she ceased to be a stockholder, the cause of action abated so far as she is concerned. There would be no one left in court with the capacity to continue the litigation. She cannot prosecute an action as a member of a class to which she does not belong.

*Johnson v. Baldwin*, 69 S.E.2d 585, 589 (S.C. 1952).

The holding in *Johnson* was reaffirmed in *Davis v. Hamm*, 387 S.E.2d 676, 678 (S.C. Ct. App. 1989). The rule that standing for shareholder derivative actions generally requires a plaintiff to maintain continuous stock ownership also is recognized in other states. *See*, *e.g.*, *Judson C. Ball Revocable Trust v. Phoenix Orchard Group I, L.P.*, 431 P.3d 589 (Ariz. Ct. App. 2018); *Calif. State Teachers' Ret. Sys. v. Blankenship*, 814 S.E.2d 549 (W. Va. 2018); *In Re Massey Energy Co. Derivative & Class Action Litig.*, 160 A.3d 484 (Del. 2017); *Rael v. Page*, 222 P.3d 678 (N.M. Ct. App. 2009); *Bacigalupo v. Kohlhepp*, 240 S.W.3d 155 (Ky. Ct. App. 2007); *Timko v. Triarsi*, 896 So. 2d 89 (Fla. Ct. App. 2005); *Grace Bros., Ltd. v. Farley Indus., Inc.*, 450 S.E.2d 814 (Ga. 1994). The court concludes that, pursuant to the continuous ownership rule articulated in *Johnson*,

Plaintiffs no longer possess standing to pursue a derivative action against SCANA.[2]

Some jurisdictions recognize exceptions to this rule of standing as it applies to mergers. Under Delaware law, the one of the recognized exceptions to the rule is where the merger itself is the subject of a claim of fraud. *Lewis v. Anderson*, 477 A.2d 1040, 1046, n.10 (Del. 1984)(citing cases). At the hearing, Plaintiffs conceded that the complaint does not list "a whole litany of frauds related to the merger itself" or "descriptions saying that the . . . merger was entered into solely by fraudulent purposes[.]" ECF No. 189, 17. Rather, Plaintiffs urged the court to fashion its own equitable remedy to prevent Defendants from escaping liability. Specifically, Plaintiffs contend that shareholders who did not choose to have their standing stripped from them by the conduct of the directors should be allowed to proceed with their litigation. The court declines to fashion such a remedy.

As with any derivative action, "the liability of directors for loss to a corporation due to their mismanagement is an asset of the corporation and any recovery on such a cause of action belongs solely to the corporation. The stockholder in an action of this kind is only a nominal plaintiff, the

---

[2] Some federal jurisdictions have also inferred the "continuous ownership" requirement from the procedural requirements of Fed R. Civ. P. 23.1(a) (requiring plaintiffs in a derivative action to "fairly and adequately represent the interests of shareholders . . . who are similarly situated in enforcing the right of the corporation or association"). *See Quinn v. Anvil Corp.*, 620 F.3d 1005 (9th Cir. 2010). "[T]he continuous ownership requirement stems from the equitable nature of derivative litigation which allows a shareholder 'to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own.'" *Lewis v. Chiles*, 719 F.2d 1044 (9th Cir. 1983) (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)). South Carolina adopted Rule 23.1 as S.C. Rule Civ. P. 23(b)(1). Rule 23(b)(1), which allows "'courts called on to interpret the new South Carolina rule [to] have a large body of federal precedent from which to draw.'" *Carolina First Corp. v. Whittle*, 539 S.E.2d 402, 407 (S.C. Ct. App. 2000) (quoting S.C. Code Ann. § 33-7-400 South Carolina Reporters' Comments (1990)); *see also* S.C. Code Ann. § 33-7-400 providing that "derivative suits may be maintained on behalf of South Carolina corporations in federal and state court in accordance with the applicable rules of civil procedure"). The court need not address the genesis of the continuous ownership rule, as the same result is reached under the procedural prerequisites of Rule 23.1(a) as under South Carolina's common law articulated in *Johnson*.

corporation being the real party in interest." *Johnson*, 69 S.E.2d at 588 (citing cases). By virtue of the merger, the asset represented by the within derivative litigation vested in Dominion. *See* S.C. Code Ann. § 33-31-1105(2). It is Dominion's prerogative to pursue an action against Defendants.

## CONCLUSION

For the reasons stated, Defendants' motion for judgment on the pleadings (ECF No. 172) is **granted**. The complaint is dismissed without prejudice for lack of standing.

**IT IS SO ORDERED**.


/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

August 26, 2019